## SAMUEL KENNEDY v. THE MURPHY IRON WORKS.

*Payment—Mistake—Wages of employé—Estoppel.*

1. The theory upon which the law permits a recovery for money paid by mistake is that the same was received either by mistake or with knowledge of the overpayment, in which case the law raises an implied promise to repay.

2. Where, by reason of the change of work of a mechanic to that requiring increased skill, he is promised an indefinite increase of wages, he is entitled to have the new rate fixed, and if he receives an increased sum for months, without fraud or deception on his part, the defendant cannot, on the ground of an alleged mistake in such payment, prevent a recovery by the mechanic at the increased rate.

Error to Wayne. (Hosmer, J.) Submitted on briefs April 22, 1892. Decided May 6, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*W. F. Atkinson*, for appellant.

*James D. May*, for plaintiff.

McGRATH, J. This case presents a novel question. Plaintiff was a core maker by trade, but in July, 1890, he was employed by defendant's foreman as a helper on the core bench, at $1.25 per day. About two weeks after his employment, the regular core maker was discharged, and plaintiff was asked by the foreman if he could make cores, and, upon replying in the affirmative, he was put at that work, and told that he would receive a higher rate of wages. Upon the next pay day in September he received an envelope marked "$2.50 per day," and containing his wages at that rate. He con-

tinued to work in that capacity until January 25, 1891, and received his wages at the same rate. On the last-named date he had worked about three weeks, and wanted some money, and asked the superintendent for two weeks' pay, $30, when, according to the testimony:

"The superintendent then says, 'Why, we are not paying you $2.50 a day.' I says, 'Yes, you are paying me $2.50 a day.' 'Well,' he says, 'we don't want you any more.' He says, 'You quit.' Says I, 'All right, sir.' So he says to this man, he says, 'Pay him off.' They did not have the money then. They told me to come around in the evening. I went home and dressed up, and that only took me about an hour, and I came back again, and they told me that they would not give me any."

This suit is brought to recover plaintiff's wages for 18 days at $2.50 per day. Plaintiff recovered, and defendant appeals.

It appeared that the wages paid core makers varied from $1.50 to $3 per day. No question is raised as to the foreman's authority to employ help, and fix the rate of wages, but it is claimed that, as between defendant or his foreman and plaintiff, no rate was ever fixed; that the payment at the rate of $2.50 was by mistake, and created no liability; that, after the work was changed, plaintiff could be allowed only what the work was worth, and that defendant is entitled to set off the overpayment. Defendant's foreman says:

"The core maker left, and I asked him if he could make cores, and he said, 'Yes.' 'Now,' I says, 'Sam, if you can make those cores, after a while you will get a raise.' Well, he made the cores, and I talked with the superintendent about giving him a raise, and we agreed to give him 12 shillings; but I never told him. He never asked me for a raise, and I never gave him a raise. It went along, and I thought it was his place to ask me for a raise, before I was going to give it to him. We were paying him I know— I thought he was getting 10 shillings a day.

"*Q.* When you set him at this core making, you said to him, 'If you make these cores, I will give you a raise?'

"*A.* And after he had been working there a while I spoke to the superintendent."

The court instructed the jury as follows:

"Having paid Mr. Kennedy through October, November, and December on that basis, unless there was something in the case which would lead Mr. Kennedy to suppose, by reason of the amount that he was receiving, that there was something wrong in the amount of wages that he received, *they could not, in the month of January, refuse to pay him the $2.50 a day;* but, gentlemen of the jury, if you find that there was a mistake in this matter, and the wages were, in comparison with the other wages, so extremely high that Mr. Kennedy, on his part, had reason to believe that a mistake had been made, then, gentlemen of the jury, they would not be estopped by their action. In other words, if it was such a rate that Mr. Kennedy would have reason to believe that a mistake had been made, then, and under those circumstances, they might offset, as against his claim for these 18 days, the difference between what his wages should be at a fair rate, inasmuch as there was no agreement as to the specific terms after the promise to raise, and what he had actually been paid. *It is for you to say; it is* squarely a question of fact; but, as I said before, if you find that, having paid him the $15 per week, it was not so far in excess of a fair rate that he had reason to believe that a mistake had been made, they could not, in the month of January, discontinue that rate; and he would be entitled to recover for the 18 days, or 17.9 days, on the basis still of $2.50 a day. And, if a mistake did occur, and you find the rate was so high as to lead him to believe that some mistake had been made, then he would not be entitled to compensation except at a reasonable rate, and they might offset any excess that they had paid him against the fair rate of wages for 17 days and nine-tenths, or 18 days."

We find no error in this instruction. Defendant had promised plaintiff an increase in wages, by reason of work requiring greater skill. Plaintiff received his wages

regularly for months at the rate of $2.50 per day. He was guilty of no fraud or deception. He was entitled to have the new rate fixed, and, unless there was something in the amount received to excite inquiry, he was justified in accepting what was paid him as the fulfillment of the promise made. The theory upon which the law permits a recovery for money paid by mistake is that the same was received either by mistake or with knowledge of the overpayment, in which case the law raises an implied promise to repay. Here there was neither. If the foreman, having promised an increase, had by mistake notified plaintiff that he should receive $2.50 per day, and he had worked several months receiving that pay, and had continued expecting to receive that rate, it could not be contended that he would not be entitled to receive that amount. Defendant's mistake cannot now be corrected at the expense or prejudice of plaintiff, who has in good faith acted and relied upon conduct in the line of what was promised. Plaintiff was entitled to a voice in the new rate. Other equities have intervened. Plaintiff cannot now be placed *in statu quo*, nor can he be driven to a recovery upon a *quantum meruit*. Relying upon the defendant's act, plaintiff has parted with his labor. Defendant's payment of the increased wages, following, as it did, a promise in that direction, naturally and directly indicated an intent, and, having been acted upon in good faith by plaintiff, it must be given the same force and effect as actual intention.

The judgment is affirmed, with costs to plaintiff.

The other Justices concurred.